**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TERRY ROZIER,<br><br>Defendant. | No. 25-CR-323 (S-1) (LDH)<br><br>** ORAL ARGUMENT REQUESTED** |

**TERRY ROZIER'S REPLY TO THE MOTION TO DISMISS**
**COUNTS THREE AND FOUR OF THE SUPERSEDING INDICTMENT**

**MARKUS/MOSS PLLC**

David Oscar Markus
Anita Margot Moss
Lauren Field Krasnoff

40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

*Served on opposing counsel July 31, 2026*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

ARGUMENT..........................................................................................................................1

     I.     COUNT THREE FAILS TO STATE AN OFFENSE UNDER § 224......................1

         A.  The Text Requires a Scheme Whose Purpose Is To Influence "That Contest."................................................................................................1

         B.  The Government Argues Legislative History First Because the Text Is Against It...................................................................................................3

     II.    VENUE ON COUNT THREE IS IMPROPER ......................................................4

     III.   COUNT FOUR DOES NOT PLEAD AN HONEST-SERVICES CONSPIRACY ......................................................................................................5

         A.  The Bribery Label Does Not Supply the Missing Theory ................................5

         B.  The Indictment Identifies No Corrupted Service.................................................6

         C.  Count Four Pleads No Agreement To Defraud the Hornets or the NBA ...........8

         D.  No Cognizable Duty to the NBA Is Alleged.......................................................8

     IV.   COUNTS ONE AND FOUR ARE MULTIPLICITOUS UNDER *BRAVERMAN*..................................................................................................9

CONCLUSION.....................................................................................................................10

i

# TABLE OF AUTHORITIES

**CASES:**

*Abouammo v. United States,* 608 U.S. —, No. 25-5146 (U.S. June 11, 2026)................1, 4

*Albernaz v. United States*, 450 U.S. 333 (1981) ....................................................9

*Braverman v. United States,* 317 U.S. 49 (1942)......................................1, 8, 9, 10

*Blockburger v. United States,* 284 U.S. 299 (1932) ..............................................9

*Carpenter v. United States,* 484 U.S. 19 (1987) ....................................................7

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ..............................................1

*Conroy v. Aniskoff*, 507 U.S. 511 (1993)................................................................3

*Dubin v. United States*, 599 U.S. 110 (2023) .........................................................2

*McNally v. United States,* 483 U.S. 350 (1987) .....................................................6

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ........................................................3

*Percoco v. United States*, 598 U.S. 319 (2023)....................................................5, 9

*Perrin v. United States*, 444 U.S. 37 (1979) ..........................................................4

*Ratzlaf v. United States*, 510 U.S. 135 (1994)........................................................3

*Skilling v. United States,* 561 U.S. 358 (2010)..................................................5, 6, 8

*United States v. Burke,* 700 F.Wd 70 (wd. Cir. 1983)..........................................4

*United States v. Cabrales*, 524 U.S. 1 (1998) .......................................................5

*United States v. Carpenter*, 791 F.2d 1024, 1035 (2d Cir. 1986),
*aff'd*, 484 U.S. 19 (1987)........................................................................................7

*United States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997)....................................7

*United States v. DiNapoli, 557 F.2d 962 (2d Cir. 1977)* .......................................4

*United States v. Gaskin*, 364 F.3d 438 (2d Cir. 2004)...........................................10

*United States v. Gerry, 515 F.2d 130 (2d Cir. 1975)*.............................................4

*United States v. Korfant*, 771 F.2d 660 (2d Cir. 1985)........................................................10

*United States v. Mazzei*, 700 F.2d 85 (2d. Cir. 1983)............................................................4

*United States v. Napout*, 963 F.3d 163 (2d Cir. 2020) .......................................................8, 9

*United States v. O'Hagan,* 521 U.S. 642 (1997).....................................................................7

*United States v. Pinto*, 503 F.2d 718 (2d Cir. 1974) ..............................................................4

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)................................................................8

*United States v. Reed,* 639 F.2d 896 (2d Cir. 1981) .............................................................10

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (*en banc*) .....................................6, 7

*United States v. Tzolov,* 642 F.3d 314 (2d Cir. 2011) .............................................................4

*United States v. Walsh*, 544 F.2d 156 (4th Cir. 1976) ............................................................4

*United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993) ........................................................7

*United States v. Wiltberger*, 18 U.S. 76 (1820)..................................................................3, 4

*Whitfield v. United States*, 543 U.S. 209 (2005) ....................................................................5

**STATUTES:**

18 U.S.C. § 224...............................................................................................................1, 2, 4

18 U.S.C. § 224(a) ....................................................................................................................1

18 U.S.C. § 224(b) ...................................................................................................................2

18 U.S.C. § 1346.................................................................................................................5, 6, 9

18 U.S.C. § 1349.............................................................................................................8, 9, 10

**RULES:**

Fed. R. Crim. P. 12(b)(3)(B)(ii) .............................................................................................10

## PRELIMINARY STATEMENT

Asked to defend its reading of the Sports Bribery Act, the government leads not with the words Congress enacted but with a floor statement from 1964. Opp. 5. Asked to address *Abouammo*, decided unanimously five weeks before the opposition was filed and central to the venue motion, the government does not discuss it. Asked how one alleged agreement about one game can support two conspiracy counts under the same statute, the government never mentions *Braverman v. United States*, 317 U.S. 49 (1942), the decision that controls. Asked for a single judicial decision in six decades sustaining § 224's application to a scheme aimed at an individual player's statistical lines rather than at a contest, the government offers its own recent indictments. Opp. 7, 9.[1] The motion should be granted.

## ARGUMENT

### I.   COUNT THREE FAILS TO STATE AN OFFENSE UNDER § 224.

#### A.   The Text Requires a Scheme Whose Purpose Is To Influence "That Contest."

Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). What Congress said is that the contest itself must be the scheme's target. Section 224(a) reaches a scheme "to influence, in any way, by bribery any sporting contest, with knowledge that the purpose of such scheme is to influence by bribery that contest." 18 U.S.C. § 224(a). The phrase "in any way" describes the manner in which the sporting contest may be influenced. It does not change the object of the scheme from the contest

---

[1] As for the exculpatory text message, the prosecution says only that it "does not relate to sports gambling." Opp. 3 n.2. But Laster wrote "Dont tell Chum bout the bet" from Philadelphia (where he was supposedly collecting the wagering proceeds) shortly after the game, and the government has produced co-conspirator statements confirming that Mr. Rozier did not know about the bets before the game.

itself to any wager, betting market, or proposition associated with the contest. The knowledge clause confirms that a defendant must know that the purpose is to influence "that contest." Thus, "in any way" describes *how* a contest may be influenced, not *what* may be influenced.

The Superseding Indictment pleads a different scheme. Its own charging language defines the wagers at issue, proposition bets, as bets "regarding the occurrence or non-occurrence during a game of an event not directly affecting the game's outcome," Doc. 101 ¶ 26,[2] and alleges a plan to profit on Mr. Rozier's individual statistical "unders." Doc. 101 ¶¶ 37-42. The government answers that a starting player's statistics affect a game's outcome "at least indirectly," and that "common sense" says so. Opp. 9-10. But that is speculation, and § 224 requires more than incidental effect on a contest. And the purpose here was never to influence the outcome of the game. The alleged payment was renegotiated after the game from approximately $100,000 to approximately $70,000, not because the supposed act of influence failed (the early exit occurred exactly as alleged) but because Mr. Rozier's four rebounds beat his betting line and wagers lost. Doc. 101 ¶ 44; Opp. 2. The grand jury addressed winning prop bets, not changing a basketball game.

The government's "indirectly" construction also has no stopping point. If every paid act by anyone connected to a game "influences" it because everything affects a contest indirectly, § 224 becomes a general federal code of sports conduct, reaching what leagues and state regulators police and what § 224(b) preserves to them. The Supreme Court has "[t]ime and again … prudently avoided reading incongruous breadth into opaque language in criminal statutes," *Dubin v. United States*, 599 U.S. 110, 130 (2023).

---

[2] Strangely, the government says that quoting the indictment on a motion to dismiss (where we are supposed to quote the indictment) is playing "gotcha." Opp. 9.

**B.** **The Government Argues Legislative History First Because the Text Is Against It.**

When an argument opens with the Congressional Record rather than the text, Opp. 5-6, the ordering is itself an admission. Courts "do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994). Hunting through legislative history is too often "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in the judgment). The government offers not committee analysis but a single congressman's floor remark, and "floor statements by individual legislators rank among the least illuminating forms of legislative history." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017).

Taken on its own terms, Congressman Corman's statement proves the defense point. His examples beyond a game's outcome were "the point spread in a game" and "the round in which a prizefight might be terminated." Opp. 5 (quoting 110 Cong. Rec. 920 (1964)). A point spread is the contest's margin; the round in which a fight ends is its duration. Both are features of the contest's result, which is why the cases the government collects, point-shaving and race-fixing, all involve fixing contests. Congress in 1964 extended the bill from a contest's outcome to a contest's other features; it said nothing about an individual contestant's statistical line. The government's real submission, that the alleged conduct is the "type" Congress was "concerned about," Opp. 9, is the argument Chief Justice Marshall rejected two centuries ago: "It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated." *United States v. Wiltberger*, 18 U.S. 76, 96 (1820) (Marshall, C.J.).

3

Every decision the government cites enforced § 224 against a scheme that fixed a contest: *Burke* and *Mazzei* involved points shaved against the spread, the contest's margin; *Gerry*, *DiNapoli*, and *Walsh*, horse races fixed by order of finish. The other case, *Pinto,* is not a § 224 case. Opp. 5-7. The government's remaining citations are charging instruments. Opp. 7, 9. Indictments construe nothing; they restate the question presented. In six decades, the government has identified no judicial decision sustaining § 224's application to a scheme aimed at a player's individual statistics.

That leaves *Perrin*, which the government reads to have "already rejected" lenity for an entire legislative package. Opp. 10. *Perrin* held no such thing: it found the term "bribery" in the Travel Act clear, including commercial bribery, so lenity had no work to do. *Perrin v. United States*, 444 U.S. 37, 49 & n.13 (1979). Lenity is question-specific. The question here, whether influencing prop-bets is a scheme to influence the contest, is one the text answers for the defense and no court has ever answered for the government. At minimum, the government's boundless alternative leaves exactly the doubt lenity resolves against the prosecution. *Wiltberger*, 18 U.S. at 96.

## II.    VENUE ON COUNT THREE IS IMPROPER.

The opposition never addresses *Abouammo*, though five weeks before the government filed, a unanimous Supreme Court reversed a conviction tried where a crime's effects were felt rather than where its conduct occurred. It reiterated that a court "must initially identify the conduct constituting the offense" and locate where those acts occurred, *Abouammo*, slip op. at 4, and held that effects a defendant contemplates elsewhere "cannot figure in determining where" the "crime [was] committed." *Id.* at 7. Venue is offense-specific: it rests on the conduct constituting the offense charged in the particular count. *See United States v. Tzolov,* 642 F.3d 314 (2d Cir. 2011).

For the conspiracy charged in Count Three, the qualifying conduct is the agreement and acts in its furtherance. *See Whitfield v. United States*, 543 U.S. 209, 218 (2005). The government identifies exactly one particularized act in this district: "[w]hile located within the Eastern District of New York, Pham . . . engaged in communications regarding and in furtherance of *the fraudulent wagering scheme*." Opp. 12 (Doc. 101, ¶41(b)). The "fraudulent wagering scheme" is the object of Count One. Count Three is what the government itself calls "a more closely held bribery scheme," Opp. 2, pleaded among Mr. Rozier, Laster, Fairley, and Co-Conspirator 1, Doc. 101 ¶ 37, and charged against Hennen, Laster, and Mr. Rozier alone. Doc. 101 ¶¶ 70-71. The Indictment does not allege that Pham joined that agreement. It pleads him as a bettor who wagered in New Jersey on information at several removes. Doc. 101 ¶ 41(b). An act pleaded in furtherance of one conspiracy does not lay venue for a different one. *Cabrales*, 524 U.S. at 6-7.

## III.    COUNT FOUR DOES NOT PLEAD AN HONEST-SERVICES CONSPIRACY.

No one disputes that § 1346 reaches traditional private-sector bribes and kickbacks. The question is whether the facts this indictment pleads fall within "the bribe-and-kickback core of the pre-*McNally* case law." *Skilling*, 561 U.S. at 409. Whether they do, accepted as true, is a question for the Court. *Percoco* reversed a conviction because the legal standard defining the duty was wrong. *Percoco v. United States*, 598 U.S. 319, 329-31 (2023). The government's refrain that these questions belong to the jury, Opp. 13-14, 20, would read Rule 12 out of every honest-services case.

### A.  The Bribery Label Does Not Supply the Missing Theory.

*Skilling* confined § 1346 to its historical core so the intangible-rights theory could not become a general ban on compensated disloyalty. 561 U.S. at 404, 408-09. The traditional offense's structure is settled, and the government's own authority states it: "In the bribery or kickback cases, a defendant who has or seeks some sort of business relationship or transaction with the victim

5

secretly pays the victim's employee … in exchange for favored treatment." *United States v. Rybicki*, 354 F.3d 124, 139 (2d Cir. 2003) (*en banc*).

Mr. Rozier does not contend that economic loss is an element or that a formal "matter" must be pending. Opp. 18-19. The point is structural. The cases *Rybicki* identified, and every controlling example the government invokes, share one structure: the payor sought something from the principal, and the payment corrupted the fiduciary's handling of the principal's affairs to obtain it. The alleged payors here had no business, claim, contract, or dealing of any kind with the Hornets or the NBA, sought nothing from either, and aimed only to win wagers against sportsbooks in a different market. Doc. 101 ¶¶ 37-45. The government identifies no pre-*McNally* analogue and no decision since, and its rule has no limiting principle: any employee who takes outside money to break any workplace rule commits a twenty-year felony, even where the payor wants nothing from the employer. *Skilling* excluded even undisclosed self-dealing to keep § 1346 from becoming that federal code of workplace loyalty. 561 U.S. at 409-10.

## B. The Indictment Identifies No Corrupted Service.

The government says Count One concerns the disclosure of information while Count Four concerns a payment to leave a game. Opp. 17-18. The pleading does not maintain that distinction. It pleads the cash as "payment for the non-public information that LASTER had obtained from ROZIER." Doc. 101, ¶45. It says the amount was renegotiated from approximately $100,000 to approximately $70,000 after the game because the rebound bet lost. *Id*. ¶ 44. Those allegations describe a wager-driven bargain, priced to the bettors' winnings rather than to any service owed the Hornets. The government cannot convert that bargain into a second conspiracy by relabeling the payment.

6

Consider what the indictment does not allege. It does not allege a feigned injury: Mr. Rozier "suffered a lower leg injury" and "continued to play with the injury." Doc. 101 ¶ 37. It does not allege that he intentionally missed shots, withheld effort, defied a coach, trainer, or physician; his rebounds were "in line with his per-game average" and "above the line set by oddsmakers." Doc. 101 ¶ 43. Nothing pleaded shows a payment that corrupted an entrusted playing service rather than purchased advance information about an injury-based withdrawal.

What remains is the alleged nondisclosure of the extent and timing of an actual injury, which at most implicates a league reporting rule. It is not what *Rybicki* requires: an agent "purporting to act for and in the interests of" the principal who secretly serves the payor, with a material deception of the principal. 354 F.3d at 141-42; Opp. 19 n.4.

After dismissing *Carpenter* and *O'Hagan* as cases with "no bearing," Opp. 12-13, the government concedes that "the defendant's disclosure of nonpublic information was a component part of the scheme to defraud the sports books" charged in Count One. Opp. 17. An employer's confidential information is the employer's property, *Carpenter v. United States*, 484 U.S. 19, 25-27 (1987), and "not every breach of an employee's fiduciary duty to his employer constitutes mail or wire fraud." *United States v. Carpenter*, 791 F.2d 1024, 1035 (2d Cir. 1986), *aff'd*, 484 U.S. 19 (1987); *accord* Opp. 16.

The concession does not foreclose a separate honest-services charge, but it obliges Count Four to plead a distinct wrong: an agreement to corrupt a service owed the Hornets or the NBA, with a material deception of that principal. The specific allegations do not supply it; the honest-services object appears only in conclusory charging language. *United States v. Czubinski*, 106 F.3d 1069, 1074–77 (1st Cir. 1997), and *United States v. Walters*, 997 F.2d 1219, 1224–27 (7th Cir. 1993), enforce the boundary the government concedes: workplace misconduct and misuse of

7

information do not become federal fraud unless the conduct satisfies the particular theory charged. Recharging the identical nondisclosure as an honest-services felony is the workaround *Skilling* closed.

### C.  Count Four Pleads No Agreement To Defraud the Hornets or the NBA.

Count Four charges conspiracy under § 1349, so the government must plead an agreement whose object was depriving the Hornets or the NBA of honest services; an incidental effect on the team or league is not an object. The common objective actually pleaded is different: obtain and exploit advance information so bettors could win proposition wagers against the Betting Companies. Doc. 101 ¶¶ 30–46. No allegation states that the supposed payors agreed to corrupt any Hornets or NBA decision, sought anything from either, or shared any objective concerning them. What remains is Doc. 101 ¶ 73's recital that the same three men conspired "to defraud the Charlotte Hornets and NBA" of Mr. Rozier's "honest and faithful services." But an indictment "must state some fact specific enough to describe a particular criminal act, rather than a type of crime," *United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000), which this does not do.

If the agreement is the single wagering arrangement pleaded in ¶¶ 37–46, *Braverman* permits one § 1349 conspiracy, not two. *See infra* Part IV. If it rests on some distinct agreement, the indictment never identifies it. The government cannot have it both ways.

### D.  No Cognizable Duty to the NBA Is Alleged.

The Superseding Indictment alleges that Mr. Rozier "played for the Charlotte Hornets." Doc. 101 ¶ 4. As to the NBA, it alleges that the league "maintained codes of conduct applicable to its players" and that a collective bargaining agreement and uniform player contract "applied to" them. Doc. 101 ¶ 5. *Napout* is not to the contrary: the officials there operated under codes that "expressly provided" they had "a fiduciary duty" to FIFA and owed "absolute loyalty." *United*

8

*States v. Napout*, 963 F.3d 163, 185 (2d Cir. 2020). *Percoco* supplies the limiting principle: a private person owes honest services to an entity only as its "actual agent[]," and "ill-defined" association is not enough. 598 U.S. at 329–31. The indictment alleges no NBA employment, no agreement to act on the league's behalf, and no delegated authority over any league matter. The government introduces the athlete-as-league-fiduciary proposition with a "cf.," Opp. 7-8, and cites no decision so holding. At a minimum, the NBA theory should be dismissed.

## IV.    COUNTS ONE AND FOUR ARE MULTIPLICITOUS UNDER *BRAVERMAN*.

Counts One and Four charge the same offense: conspiracy to commit wire fraud under 18 U.S.C. § 1349. Section 1346 creates no separate offense. It defines "scheme or artifice to defraud," to include honest-services deprivation. *Braverman* explained that one agreement may not be split into two conspiracy charges, and it answered the government's *Blockburger* argument along with it. There a single agreement had seven criminal objects, the government charged a count for each, and the Court reversed: "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Braverman* 317 U.S. at 53. The Court then distinguished *Blockburger*, explaining that a single continuing agreement embracing its criminal objects "differs from successive acts which violate a single penal statute and from a single act which violates two statutes," and holding that "[t]he single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute." *Id.* at 54 (citing *Blockburger v. United States*, 284 U.S. 299, 301-04 (1932)). *Albernaz v. United States*, 450 U.S. 333 (1981), permitted cumulative punishment under two different conspiracy statutes

and distinguished *Braverman* on that basis. *Id.* at 339-40. Here, as in *Braverman*, both counts arise under a single conspiracy statute, § 1349.

One agreement is all the Indictment pleads as to Mr. Rozier: he would leave early, others would wager on his unders knowing the exit was coming, and payment would come from the proceeds. Doc. 101 ¶¶ 37–46. The overlap is complete. Both counts incorporate paragraphs 1 through 65; every Count Four defendant is charged in Count One; Count Four's period falls entirely within Count One's; and no separate meeting, communication, payment, participant, or act is alleged to form an independent agreement to defraud the Hornets or the NBA. *Id.* ¶¶ 66-67, 72-73. The government's own descriptions concede it: "more closely held," occurring "simultaneously alongside aspects of the larger scheme," Opp. 2, the "narrower" charge. Opp. 20. Every factor the Second Circuit weighs points to one agreement, *see United States v. Korfant*, 771 F.2d 660, 662 (2d Cir. 1985) (per curiam) (listing factors), and this is a smaller alleged conspiracy wholly contained within a larger one, "concentric rather than overlapping circles." *United States v. Gaskin*, 364 F.3d 438, 454 (2d Cir. 2004).

Nor is the defect premature. Rule 12 requires that multiplicity be raised as a pretrial motion, Fed. R. Crim. P. 12(b)(3)(B)(ii). The prejudice is a trial problem: multiplicitous counts "may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). That suggestion cannot be undone at sentencing. If Count Four is not dismissed, the Court should require the government to elect between Counts One and Four before trial.

## CONCLUSION

For these reasons and those in the motion, Counts Three and Four should be dismissed, and Counts One and Four should not both be put to a jury.

Respectfully submitted,

**MARKUS/MOSS** PLLC
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:    /s/ David Oscar Markus
       David Oscar Markus
       dmarkus@markuslaw.com

       */s/ Anita Margot Moss*
       Anita Margot Moss
       mmoss@markuslaw.com

       */s/ Lauren Field Krasnoff*
       Lauren Field Krasnoff
       lkrasnoff@markuslaw.com