

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL:KTF/BW/DIB                           *271 Cadman Plaza East*
F. #2024R00288                           *Brooklyn, New York 11201*


August 4, 2026

**<u>FILED PARTIALLY REDACTED AND UNDER SEAL</u>**

<u>By E-mail and ECF</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v Deniro Laster
>        <u>Criminal Docket No. 25-323 (LDH)</u>

Dear Judge DeArcy Hall:

The government respectfully submits this letter-motion requesting that the Court issue an order revoking the defendant Deniro Laster's (the "defendant" or "Deniro Laster") bond and directing that the defendant be detained in custody pending trial.   Revocation is warranted because Deniro Laster has repeatedly and flagrantly violated the conditions of his release by attempting to obstruct justice and tamper with witnesses.   For these reasons, Deniro Laster is unlikely to abide by any future release conditions.

I.      <u>Background</u>

        A.      <u>Factual Background of the Charges Against Deniro Laster</u>[1]

        The Superseding Indictment alleges a nationwide conspiracy in which the defendants and their co-conspirators agreed to place fraudulent wagers based on nonpublic information about professional athletes' anticipated performance in National Basketball

---

[1]      The government herein proffers certain facts developed from, among other sources, witness accounts and electronic communications.   See <u>United States v. Brooks</u>, 872 F.3d 78, 84, n.11 (2d Cir. 2017) ("It is well established that the government may proceed by proffer at a bail revocation hearing.").   Because of the multiple attempts at witness tampering by Deniro Laster described below, the government does not here attribute some of the proffered evidence to particular witnesses.

Association ("NBA") games and then launder the illicit proceeds from their fraudulent wagers. See United States v. Earnest, et al., 25-CR-323, ECF No. 101 (the "Superseding Indictment").

One of the several games implicated in the charged crimes involved the defendant Terry Rozier ("Rozier") who, at the time, was a professional basketball player in the NBA and a starting shooting guard for the Charlotte Hornets. As alleged, in 2023, in exchange for a promised bribe payment, Rozier informed his longtime friend and frequent sports gambler Deniro Laster that he intended to withdraw himself early from an upcoming game. Later, Rozier specified to Deniro Laster that he intended to withdraw prematurely from the Hornets' March 23, 2023 game (the "March 23 Game"). Rozier shared his plan with Deniro Laster so that Deniro Laster and co-conspirators could place fraudulent wagers based on that information. Deniro Laster shared this information with co-defendant Marves Fairley ("Fairley") and another co-conspirator ███████████████████████████[2] so that they could facilitate placing fraudulent wagers based on this information and give Deniro Laster and Rozier a portion of the proceeds from these wagers. Rozier and Deniro Laster negotiated a $100,000 bribe with ██████ and Fairley for the betting information, which was later reduced to $70,000 after Rozier collected too many rebounds before removing himself from the game, as described further below. Deniro Laster also shared this information with his brother, ████████ ██████████████, for the purpose of enabling ██████████ to place fraudulent wagers based on this information.[3] For example, on the morning of March 23, 2023, at the direction of ████████████████████████████████, who is the sister of ████████████ and ████████ ██████████, placed a $4,000 wager on Rozier's unders for the March 23 Game based on the non-public information regarding his anticipated early exit from the game.

As planned, Rozier removed himself from the March 23 Game in the first quarter and did not return. As a result of his withdrawal, Rozier underperformed significantly with respect to his per-game averages of points, assists and three-pointers and below the lines set by oddsmakers for these statistical categories. Rozier, however, collected four rebounds, which was above the line set by oddsmakers. Because Rozier went over on his rebounds, any parlay bets placed by the co-conspirators on Rozier's unders that included rebounds as a leg of the parlay lost. Regardless, many of the co-conspirators' bets still won and the co-conspirators fraudulently obtained from betting operators over $100,000 in profits on the March 23 Game.

On or about March 28, 2023, Rozier arranged and paid for Deniro Laster to fly to Philadelphia to pick up their portion of the illicit proceeds from Fairley. While in Philadelphia, Fairley gave Deniro Laster approximately $70,000 in cash. After retrieving the illicit proceeds from Fairley, Deniro Laster drove through the night to Rozier's house in Charlotte, where Deniro Laster and Rozier later counted the cash.

---

[2]      ██████ is referred to in the Superseding Indictment as Co-Conspirator 1.

[3]      ████████ is referred to in the Superseding Indictment as Co-Conspirator 7.

B.    Background on Deniro Laster and Close Associates' Reputations for Gun
Possession, as Relevant to Witnesses' Interpretations of His Threats

Although lawful gun possession standing alone is not inappropriate, Deniro Laster
and his close associates' reputations for gun possession is relevant to witnesses' interpretation of,
and fear from, threats issued by Deniro Laster, which threats are described in Section I(D) below.
Numerous witnesses have indicated, and social media records corroborate, that Deniro Laster,
Rozier and certain of their childhood friends belong to a crew they call "GMB."   Members of
GMB, including Deniro Laster and Rozier, have publicly held themselves out as having access to
guns, including by posting photographs on social media depicting Laster, Rozier, and other
members of GMB posing with guns prior to the government bringing charges in this case.
Deniro Laster was also known to be someone who had a gun collection and who typically carried
a gun.   Numerous of the government's witnesses are aware of Deniro Laster's and GMB's
reputations in this regard.

C.    Procedural Background

On October 16, 2025, a grand jury sitting in the Eastern District of New York
returned the Indictment charging Deniro Laster, among others, with wire fraud conspiracy, in
violation of 18 U.S.C. § 1349, and money laundering conspiracy, in violation of 18 U.S.C.
§ 1956(h).   See ECF No. 1.   Deniro Laster was released on bond first in Ohio, where he was
arrested, and then was later arraigned in the Eastern District of New York, where he was released
on bond again.   In both proceedings, a magistrate judge informed him that violation of his bond
conditions could result in pretrial detention.   On May 28, 2026, the grand jury returned the
Superseding Indictment, which added two charges: conspiracy to influence sporting contests and
honest-services wire fraud conspiracy, in violation of 18 U.S.C. §§ 224 and 1349, respectively.
Following the return the Superseding Indictment, Deniro Laster was again arraigned in the
Eastern District of New York and released on bond.   In this proceeding, a magistrate judge
again informed him that violation of his bond conditions could result in pretrial detention.
Deniro Laster's conditions of release prohibit him from, among other things, communicating
with co-defendants, co-conspirators or witnesses outside the presence of counsel.

D.    Deniro Laster's Attempts to Obstruct and Tamper with People Deniro Laster
Believes to be Witnesses

Since he first became aware of the government's investigation, Deniro Laster has
repeatedly engaged and attempted to engage in obstruction and witness tampering.   Since being
arrested in October 2025, Deniro Laster has violated his conditions of release on multiple
occasions, in particular the conditions prohibiting him from communicating with co-defendants,
co-conspirators or witnesses outside the presence of counsel and committing additional crimes
while on release.

First, sometime after September 2024, Deniro Laster and other co-conspirators
learned ███████ and expressed suspicions that ████ was cooperating with
the government.  Months later, in January 2025, Deniro Laster learned that the government had
recently issued a grand jury subpoena to ██████



█████████. Shortly thereafter, Deniro Laster used an intermediary's phone to call ███████████████████████████████████████ via FaceTime. ███████████████████████████████████████████████████████████████████████████████████████████████████. To be clear, this is not an instance of Deniro Laster violating his bond conditions, since he had not yet been arrested and no bond conditions were in place. But he learned of the government's investigation and took surreptitious steps to speak to ████████ and probe what ████████ knew and whether ██ was cooperating. As discussed further below, Title 18, Section 1512(b) makes it a crime to attempt to "knowingly use[] intimidation" or "corruptly persuade[]" or attempt to persuade another person to withhold testimony" irrespective of whether there are bond conditions in place.

Second, following Deniro Laster's October 2025 arrest in this case, Deniro Laster (i) asked two associates of ████████ whether ████████ was cooperating with the government and (ii) advised a third ████ associate, in a way that was interpreted as a threat, that ████████████████████████████████████████████████████████████. Deniro Laster's membership in GMB and his prior online flaunting of gun access contributed to this message being interpreted as a threat. In addition to being a likely violation of 18 U.S.C. § 1512(b), Deniro Laster's attempt to contact ████████ through a third party was a violation of his bond. See Attachment A (condition 7(e) – prohibiting any form of contact with co-defendants, co-conspirators and victims and witnesses identified by the government).

Third, in approximately December 2025, Deniro Laster called co-defendant ████████████, and stated, in substance and in part, that Deniro Laster, ████ and their co-defendants would be well positioned to defend the charges against them if they did not cooperate with law enforcement. In addition to being a likely violation of 18 U.S.C. § 1512(b), this was another violation of Deniro Laster's bond, which prohibits him from contacting co-defendants outside of the presence of counsel.

Fourth, on or about June 30, 2026, the government sent a letter to the defendants which recounted certain statements made to the government by anonymized individuals during the course of the government's investigation. ████████████████████████████████████████

Shortly thereafter, an Instagram account bearing the username ████████████ posted a public comment of a rat emoji[4] ███████████████████████████████████████████████████████████████████████████████████████████

---

4    A "rat" is a slang term that generally refers to a person who is perceived as a snitch, informant, or someone who cooperates with law enforcement or provides information about others to the authorities.





The ▮▮▮▮▮▮ Instagram account belongs to Deniro Laster. Instagram records show that the account is registered to the following email address, and Apple records show that this same email address is registered to Deniro Laster: ▮▮▮▮▮▮▮▮▮▮. In addition, text messages produced in discovery show that Deniro Laster used the Instagram account to communicate with ▮▮▮▮▮▮



6



The ███████ rat post by Deniro Laster's ████████ Instagram account was not the first time that someone appearing to be associated with Deniro Laster and Rozier has posted a rat emoji ████████ on Instagram. Months earlier, a user operating an unidentified Instagram account with a profile picture depicting a deceased individual known as ████ posted a public comment of a rat emoji on a photograph shared to ████████ Instagram account. The government's investigation has revealed that, before his death, ████ was a close friend of both Rozier and Deniro Laster and a member of GMB. For example, as shown in Exhibits 4 and 5 below, both Rozier and Deniro Laster have posted messages about ████ on their Twitter (now X) accounts.

7



**Exhibit 4**



**Exhibit 5**

███████ involvement in GMB prior to his death is relevant context to his name being used in connection with accusing ███████ of being a "rat," given GMB's reputation for gun possession. Using the image of a deceased member of GMB to call someone a rat appears to be calculated to intimidate and imply the threat of violence.

Fifth, the government is aware of two additional instances of potential attempted witness tampering. Because describing such incidents would necessitate revealing grand jury material that is protected from disclosure by Federal Rule of Criminal Procedure 6(e), we do not describe it here and are not asking for the Court to rely on such information for the purposes of revoking Deniro Laster's bond, because the government submits the information above provides a more than sufficient basis to do so. However, the Court should be aware that there are additional concerns beyond those described above, and the government is available to provide additional information in a protected format at the Court's request.

## II.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a defendant who has violated a condition of pretrial release "is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148. The Court "shall enter an order of revocation and detention if, after a hearing," it makes the following findings under § 3148(b)(1) and (b)(2):

1.    There is "probable cause to believe that the person has committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the person has violated any . . . condition of release," and

2.    There is "no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" based on the factors set forth in 18 U.S.C. § 3142(g), or "the person is unlikely to abide by any condition or combination of conditions of release."

18 U.S.C. § 3148(b).  Although the Court must find the defendant's violation of his release conditions by clear and convincing evidence, "a preponderance of the evidence" standard applies to the latter findings.  United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986).

III.    Discussion

As set forth herein, revocation of Deniro Laster's bail is warranted for two independent reasons.  First, there is "probable cause to believe" that Deniro Laster committed crimes while on release in this case—namely, attempted obstruction of justice and witness tampering, in violation of 18 U.S.C. § 1512.  See 18 U.S.C. § 3148(b)(1).  Second, Deniro Laster's same conduct also constitutes "clear and convincing evidence" that Deniro Laster has violated conditions of his release, specifically, the prohibitions against communicating with co-defendants, co-conspirators and witnesses, and against committing criminal offenses while on release.  Revocation is appropriate when either of these conditions is met if the Court also finds either that there is "no condition or combination of conditions of release that will assure" that the defendant "will not . . . pose a danger to the safety of any other person or the community," or that the defendant is "unlikely to abide by any condition or combination of conditions of release."  See 18 U.S.C. § 3148(b)(2); see also United States v. Singh, No. 12-CR-121 (DLI), 2012 WL 3260232, at *3 (E.D.N.Y. Aug. 8, 2012) (revoking bail and ordering pretrial detention where the defendant attempted to witness tamper, and finding that the defendant's risk of future obstruction was tantamount to the defendant "posing a danger to the safety of any person or the community") (quoting 18 U.S.C. § 3148(b)(2)).

Here, the Court should find that there is no combination of conditions that will ensure the Court that Deniro Laster will not pose a danger of safety or that he will abide by the terms of his release.  On multiple occasions, Deniro Laster has communicated—often surreptitiously in an apparent effort to deceive the government and the Court—with ███████ ███████████████████████████████, in violation of his bond conditions.  Further, in those communications, Deniro Laster has attempted to intimidate witnesses, obstruct the government's investigation, and interfere with the Court's administration of justice in this matter.  Under similar facts, courts routinely revoke bail.  See, e.g., United States v. LaFontaine, 210 F.3d 125, 134 (2d Cir. 2000) (affirming an order of pretrial detention even though the defendant was "a white collar criminal with no connection to the mob, or to narcotics" who had attempted to tamper with witnesses in a non-violent fashion); Gotti, 794 F.2d at 779 n. 5 (holding that a single incident of witness tampering constituted a "threat to the integrity of the trial process" and was

9

sufficient to revoke bail); United States v. Bankman-Fried, No. 23-CR-06914 (2d Cir. Nov. 21, 2023) (ECF No. 32.1) (affirming district court's denial of release on the basis that "[t]he record supports the district court's conclusion that there was probable cause to believe that the Defendant-Appellant attempted to tamper with two witnesses in violation of 18 U.S.C. § 1512(b), and specifically that he acted with unlawful intent to influence those witnesses."); United States v. Carter, No. 24-CR-64, 2026 WL 1831410, at *4 (E.D. Tenn. June 25, 2026) (revoking bail and ordering pretrial detention where the defendant, among other things, publicly identified a cooperator as a "rat" on Facebook).

For example, as described above, after suspecting that ██████████████████, was cooperating with the government, Deniro Laster sought information about the government's investigation ██████████████████████████████████████ an apparent effort to limit ██████ availability to testify at trial and/or cooperate against Deniro Laster. Thereafter, Instagram accounts associated with Deniro Laster ████████████████ publicly posted rat emojis ████████ on at least two occasions, suggesting an effort to disparage and intimidate ████ Similarly, after his arrest, Deniro Laster contacted ████ a co-defendant, and stated that he, ████ and their co-defendants would avoid conviction if they stayed silent, i.e., refrained from cooperating with law enforcement.

Deniro Laster also has both a significant motive and the means to continue violating the conditions of his release and obstructing the administration of justice, further demonstrating that revocation of his bail is warranted. As for his motive, he faces substantial prison exposure for the charges pending, and the evidence against him is overwhelming. And he is not only motivated to protect his own liberty interests—his best friend Rozier is also his co-defendant. Those circumstances provide Deniro Laster with a powerful incentive to continue attempting to influence witnesses, interfere with the government's investigation, and undermine the integrity of the judicial process in an effort to avoid conviction and the conviction of his friend. As for his means, Deniro Laster, who works for and financially relies upon Rozier, has access to substantial financial resources as a result of Rozier's past multimillion-dollar earnings as an NBA player.

In addition, Deniro Laster and Rozier's affiliation with GMB raises an additional specter of intimidation. Indeed, witnesses in this case have expressed awareness of GMB's reputation of having access to weapons, underscoring the potentially coercive effect that Deniro Laster's affiliation with the group could have on potential witnesses and his outreach to them.

10

Given these circumstances, any condition or combination of conditions of release would be insufficient to ensure Deniro Laster's compliance with the Court's orders or to protect witnesses and the community.   Even if the Court were to impose stricter bail conditions here, those restrictions would be effectively unenforceable with respect to Deniro Laster's ability to obstruct and witness tamper.   Deniro Laster, for example, could use third parties, including other GMB members or associates, to contact, intimidate, or threaten witnesses on his behalf, and could employ additional accounts, devices, or intermediaries to conceal such conduct.   The Court therefore cannot reasonably rely on conditions of release to prevent further obstruction or witness intimidation.

Moreover, it has taken months for the government to develop and corroborate the evidence described in this letter such that we can present it to the Court.   Pretrial Services understandably has not been able to root out this behavior because of Deniro Laster's concealment and its lack of familiarity with witnesses who are not named in the indictment. The government must prepare for trial and should not be put in the untenable position of having to instead direct its efforts towards constantly re-investigating a defendant on bond who is repeatedly attempting to tamper with the judicial process.   And the mere process of raising these concerns to the Court's attention likely endangers these individuals further, because, although provided under seal, the government is forced to identify them so that Deniro Laster may defend against this motion.

Accordingly, revocation of Deniro Laster's bail is the only means of ensuring that he will comply with the Court's orders, refrain from further criminal conduct, preserve the integrity of these proceedings, and protect witnesses or perceived witnesses.   See 18 U.S.C. § 3148(b).   Moreover, an order revoking bail and ordering Deniro Laster's detention would serve the broader interests of justice, including in this case, by making clear that attempts to obstruct an investigation, intimidate witnesses, or otherwise undermine the Court's administration of justice will not be tolerated, thereby protecting the fairness and integrity of the trial process for all parties.

IV.    Conclusion

The government respectfully requests that the Court issue an order revoking the defendant's bond and directing that the defendant be detained in custody pending trial.   The government further respectfully requests that this submission be filed under seal, with a redacted version publicly filed that protects the names of third-party witnesses.   Here, sealing is warranted given that this submission discusses witnesses whom the defendant perceives as cooperating with the government.   See, e.g., United States v. Haller, 837 F.2d 84, 88 (2d Cir. 1988) (affirming decision to seal portion of a filing that referred to a defendant's ongoing cooperation).   As the facts set forth above provide the "specific, on the record findings" necessary to support sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006), the

11

government respectfully requests that the Court record those findings and file this submission under seal.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   *David I. Berman*
Kaitlin T. Farrell
Benjamin Weintraub
David I. Berman
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of Court (LDH) (by ECF)
Counsel of Record (by ECF) (sealed, redacted version)
Counsel for Deniro Laster (by email) (fully unredacted version)

# EXHIBIT A
# FILED UNDER SEAL