MARKUS / MOSS

August 9, 2026

By ECF

The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      RE: *United States v. Terry Rozier, et al.*
          Criminal Docket No. 25-323 (LDH)

Dear Judge DeArcy Hall:

- "My message to the defendants who have been rounded up today is this: Your winning streak has ended. Your luck has run out. Violating the law is a losing proposition, and you can bet on that." – Joseph Nocella, U.S. Attorney

- "They relied on corrupt individuals, including … [Terry] Rozier." – Joseph Nocella, U.S. Attorney

- "A historic arrest across a wide-sweeping criminal enterprise that envelops both the NBA and La Casa (sic) Nostra." – Kash Patel, FBI Director

- "Not only did we crack into the fraud that these perpetrators committed on the grand stage of the NBA, but we also entered and executed a system of justice against La Casa (sic) Nostra, to include the Bonanno, Gambino, Genovese, and Lucchese crime families." – Kash Patel, FBI Director

- "As the NBA season tips off his career is already benched, not for injury, but for integrity." – Jessica Tisch, NYPD Commissioner

- "The fraud is mind-boggling" and it involves "tens of millions of dollars in fraud and theft and robbery." – Kash Patel, FBI Director

MARKUS/MOSS PLLC

40 NW 3rd Street, PH 1
Miami, FL 33128
T 305 379-6667
F 305 379-6668
markuslaw.com

These are all quotes from the government press conference to a slew of reporters that was prescheduled the morning that the FBI arrested Terry Rozier in order to begin selling their claims of his guilt to the public. Each of them violates this Court's local rules.

The government has filed a letter wrongfully accusing undersigned counsel of violating Local Rule 23.1. (ECF No. 133). Although it asks this Court to take no action, undersigned counsel cannot leave these accusations to go unanswered (and this response is permitted by Local Rule 23.1(f)).

On August 4, the government publicly moved to revoke Deniro Laster's bond. The motion sought no relief against Terry Rozier. It did not claim that Terry contacted a witness, threatened anyone, or violated a single condition of his release. Yet the public portion of the pleading mentioned him *27 times*.

Despite the fact that the letter motion had nothing to do with Terry, the government littered its pleading with references to him, including falsely implying that he was a member of a gang. It told the Court, and therefore the world, that Terry belongs to a "crew" named GMB and that "the individuals associated with GMB have reputations for access to firearms," and it pointed to social media photographs to drive the gang and thug insinuation home. (ECF No. 133 at 2). Immediately thereafter, that insinuation was a national headline. Reporters called defense counsel about the government's filing, and informed counsel that they would be writing about Terry being part of a gang. My answer recited the public record, denied the accusation, and responded to the government's gratuitous claims. The rules permit that response, especially in light of the government doing everything in its power to taint the potential jury pool against Terry.

Unlike the government, counsel did not initiate the reporting now at issue or hold a press conference. Instead, the statements identified in ECF No. 133 were made in response to reporter inquiries generated by the government's needless statements in its unrelated filing and were intended to correct misstatements and misimpressions about Terry. Counsel would never intentionally violate any local rules of the Court. Rather, the response was intended to preserve Mr. Rozier's right to a fair trial and an unbiased jury, free from any taint by government misrepresentations.

This letter addresses the local rule first, and then the government's own conduct.

### I.    Counsel's statements complied with Local Rule 23.1.

*First*, the statements by undersigned counsel recited the public record and stated Terry's defense. The government complains about three quotes:

"Terry has never been charged with any firearms offense or with intimidating a witness, and nothing in this filing alleges that he did either." Every word is true. Every word comes from

the public docket. The local rule presumes that "[q]uoting or referring without comment to public records of the Court in the case" will not interfere with a fair trial. Local Crim. R. 23.1(e)(4); *see also* Local Crim. R. 23.1(e)(3) (same for "a brief description of the offense charged"). New York's Rules of Professional Conduct say the same: a lawyer may state "the claim, offense or defense" and "information contained in a public record." N.Y. R. Prof. Conduct 3.6(c)(1)-(2).

The other two quotes responded directly to the government's gang-and-firearms insinuation, which has no relationship to the charges against Terry and were entirely inappropriate. I called that insinuation "absurd" and a "dog whistle," and I made a joke about the government's inaccurate claim regarding "GMB." These comments were not about any charges against Terry, so they have no ability to affect the trial. Instead, they were a direct rebuttal to the improper (and false) suggestion by the prosecution, *unrelated* to the pending charges, that Terry was part of a gang.

The government also points to my observation that the government "sees its case is falling apart," the direct inverse of the many comments by the government about the strength of its case. That statement answered adverse publicity the government's own filing produced. To the extent that the government suggests that there is a presumption that this statement will interfere with a trial, subsection (d) creates a rebuttable presumption, not an irrebuttable rule. *United States v. Khan*, 538 F. Supp. 2d 929, 931 (E.D.N.Y. 2007) (citing *United States v. Cutler*, 58 F.3d 825, 836 (2d Cir. 1995)). In this context, the presumption is rebutted: the statement was a brief response to adverse publicity generated by the government's public filing insinuating that Terry was part of a gang; it disclosed no discovery or nonpublic information; it identified no witness; it attacked no witness's credibility; and it discussed no evidence. The Supreme Court has confirmed both principles: attorney speech in pending cases may be regulated under a substantial-likelihood standard, but defense counsel retain substantial First Amendment protection, including, in appropriate circumstances, the ability to respond publicly to protect a client. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074-75, 1080-81 (1991) (opinion of Kennedy, J.).

*Second*, the statements were a protected reply to publicity the government initiated. New York Rule 3.6(d) provides that "[n]otwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client," limited to "such information as is necessary to mitigate the recent adverse publicity." Rule 3.6 is not itself the standard this Court enforces under Local Rule 23.1, but subsection (d) confirms that the professional-conduct rules expressly recognize a limited corrective response to recent adverse publicity. See *United States v. Watson*, No. 23-CR-82 (EK), 2023 WL 7300618, at *11 (E.D.N.Y. Nov. 6, 2023). That is exactly what happened here. The publicity at issue was created by the government filing the Laster motion publicly, in the most closely followed sports prosecution in America, with an armed "crew" allegation aimed at a defendant whose release the motion does not even seek to revoke. The government's letter proves the timing: it complains that my statements

came "[m]ere hours after the government's revocation motion was filed." (ECF No. 133 at 2). Of course they did. That is what a reply is. And the reply was limited. It addressed the GMB/firearms framing and disclosed no discovery or nonpublic information, identified no witness, attacked no witness's credibility, and did not discuss the merits of the revocation motion.

An attorney's "duties do not begin inside the courtroom door." *Gentile*, 501 U.S. at 1043 (opinion of Kennedy, J.). They also do not end there. A lawyer "may take reasonable steps to defend a client's reputation and reduce the adverse consequences of indictment, especially in the face of a prosecution deemed unjust or commenced with improper motives," including "an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried." *Id.* And "in some circumstances press comment is necessary to protect the rights of the client and prevent abuse of the courts." *Id.* at 1058. The government quotes a podcast episode in which I said a lawyer cannot leave a high-profile client undefended in the court of public opinion, and it offers that quote as proof of "litigation strategy." (ECF No. 133 at 3). It is not litigation strategy. It is the necessary and appropriate part of representing a criminal defendant as Justice Kennedy recognized in *Gentile*. (While a criminal defense lawyer has the Constitutional obligation to zealously defend his client both in the court of law and the court of public opinion, there is no similar duty of the prosecutor, rendering their statements to the press even more troubling.) Terry Rozier is presumed innocent and he should remain that way.

*Khan* is instructive. There, defense counsel held a press conference, repeatedly identified and even spelled the names of potential government witnesses, called them liars, discussed the evidence, said the government "does not have a case," and expressly said he was trying to "educate" people who could become jurors. *Khan*, 538 F. Supp. 2d at 932-34. The court found a Rule 23.1 violation and a concrete danger to witnesses. *Id.* at 934. Nothing remotely comparable occurred here: no defense press conference, no witness identification, no attack on witness credibility, no disclosure of discovery or inadmissible evidence, and no statement aimed at prospective jurors.

Counsel's statements here are far less inflammatory than the statements in a recent matter in this District. In *Woodberry*, the United States Attorney had publicly described the defendant's alleged "spree" of robberies as "unprecedented" and had used the arrest to editorialize about bail reform. The Court held the statements did not violate the rule and found no prejudice. *United States v. Woodberry,* No. 20-CR-31 (DLI), ECF No. 31, at 7–14 (E.D.N.Y. July 1, 2021).

Another court in this Circuit held that the United States Attorney's twelve-minute post-arrest press conference months before the trial, "present[ed] no risk" to the defendant's right to a fair trial. *United States v. Avenatti*, 2020 WL 236723, at *13 (S.D.N.Y. Jan. 15, 2020). Those cases underscore that timing, content, scale, and the size of the jury pool matter. On those factors, the two brief reactive statements at issue here do not create a substantial likelihood of prejudicing a trial six months away.

**II.    The government's public statements about this case are far more egregious than anything said by undersigned counsel.**

The government has aggressively worked the press in this case from the first morning. Local Rule 23.1 binds prosecutors too. The government's quotation of subsection (a) omitted text that is important here: the Rule expressly applies to "government agents and police officers." Local Crim. R. 23.1(a). In *United States v. Combs*, Judge Subramanian emphasized that point, ordering federal and local law-enforcement agents associated with the case to comply with Rule 23.1 and stating that remarks attributed to an involved federal law-enforcement source, if made as reported, were "plainly improper." No. 24-CR-542 (AS), ECF No. 50, at 1-2 (S.D.N.Y. Oct. 25, 2024). The Department of Justice's own regulations go further. At no time may Department personnel furnish information "for the purpose of influencing the outcome of a defendant's trial." 28 C.F.R. § 50.2(b)(2). They are directed to refrain from "[o]bservations about a defendant's character." *Id.* § 50.2(b)(6)(i). They may not make statements "concerning evidence or argument in the case, whether or not it is anticipated that such evidence or argument will be used at trial." *Id.* § 50.2(b)(6)(v). They may not offer "[a]ny opinion as to the accused's guilt." *Id.* § 50.2(b)(6)(vi). And they "should take no action to encourage or assist news media in photographing or televising a defendant or accused person being held or transported in Federal custody," nor "make available photographs of a defendant unless a law enforcement function is served thereby." *Id.* § 50.2(b)(7).

Let's measure the government's actions in this case against those rules. Start with the arrest. Terry was represented by counsel for more than a year before October 23, 2025. His lawyers had opened a line of communication with these prosecutors. The NBA had already thoroughly investigated the same game and betting allegations against Terry and found no violation. One phone call would have produced a self-surrender at any courthouse the government named. The government never made that call. Instead, at 6:00 a.m., FBI agents arrested Terry at the Miami Heat's team hotel in Orlando, the morning after the team's season opener.

After it was leaked, press reported the arrest around 7:00 a.m. that morning, three hours before the prescheduled 10:00 a.m. press conference. Kash Patel, the Director of the FBI, traveled from Washington expressly to stand at a podium in Brooklyn with the United States Attorney, the Police Commissioner, and a row of more than a dozen stern-faced federal and state officials.



*The October 23, 2025 announcement: the Director of the FBI at the podium, joined by the United States Attorney, the three Assistant US Attorneys prosecuting this case, the Police Commissioner, and other officials.*

Mr. Patel, a lawyer also bound by the professional rules, opened by announcing "a historic arrest across a wide-sweeping criminal enterprise that envelops both the NBA and La Cosa Nostra."[1] He put Terry's name in the same breath as "the Bonanno, Gambino, Genovese, and Lucchese crime families." He called the defendants "perpetrators" and described "the fraud that these perpetrators committed on the grand stage of the NBA." He told the country "the fraud is mind-boggling" and that "we're talking about tens of millions of dollars in fraud and theft and robbery." And he summed up: "Let's not mince words. This is the insider trading saga for the NBA."

Mr. Patel made these statements, which unquestionably go to Terry's "guilt or innocence," even though the mafia allegations appear in a different indictment, the supposed rigged poker case, which charges members of those crime families. Terry is not a defendant in that case. Terry is not alleged to have met, spoken with, been associated with, or taken a dollar from anyone in organized crime. The charges against Terry concern prop bets surrounding a single basketball game. But the FBI Director introduced Terry Rozier to the country as part of one criminal enterprise enveloping the mob, and the government has never corrected the record. Terry's photograph ran beside the

---

[1] All quotations from the October 23, 2025 press conference are taken from the transcript available at https://www.rev.com/transcripts/fbi-briefing-on-nba-gambling-investigation. Video of the full press conference is available across the internet. One example: https://www.c-span.org/program/news-conference/fbi-director-patel-news-conference-on-basketball-gambling-probe-arrests/667684.

word "mob" on every screen in America. That false association with organized crime is particularly pernicious and prejudicial in New York, where the Mafia carries a historical and cultural resonance unlike anywhere else in the country.



*National coverage following the government's announcement,*
*pairing Terry with a "mob" case in which he is not charged.*

The United States Attorney for the Eastern District of New York spoke next. He is a lawyer, and Local Rule 23.1 applies to him. He described "one of the most brazen sports corruptions since online sports betting became widely legalized in the United States." He told the country that the bettors "relied on corrupt individuals, including Jones and Rozier." And he taunted the men arrested that morning: "my message to the defendants who have been rounded up today is this: Your winning streak has ended. Your luck has run out. Violating the law is a losing proposition, and you can bet on that." The local rule presumes prejudice from "any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case." Local Crim. R. 23.1(d)(7). New York's rule adds statements about "the character, credibility, reputation or

criminal record of a party." N.Y. R. Prof. Conduct 3.6(b)(1). Calling a presumptively innocent man "corrupt" at a nationally televised press conference violates both.

The Police Commissioner closed with a line written for the cameras: "As the NBA season tips off his career is already benched, not for injury, but for integrity." A public official pronounced Terry a man without integrity, at a podium provided by the United States Attorney's Office, before Terry had even made an initial appearance. That evening, the Director went back on national television, appearing on Fox News to discuss the arrests.[2]

Courts in this Circuit have warned prosecutors about far less. In *Silver*, the court found "it would not be unreasonable for members of the media or the public to interpret" the United States Attorney's arrest-day remarks as "a commentary on the character or guilt of the [d]efendant," and it was "troubled" that those remarks "appeared to bundle together unproven allegations regarding the [d]efendant with broader commentary" on political corruption. *United States v. Silver*, 103 F. Supp. 3d 370, 378-80 (S.D.N.Y. 2015). The remarks in *Silver* were mild next to "corrupt individuals," "perpetrators," and "benched, not for injury, but for integrity."

And in *United States v. Watson*, Judge Komitee considered an EDNY press release that called the defendant a "con man," said his company was a "criminal organization," and referred to "corrupt executives who flagrantly violate the law." No. 23-CR-82 (EK), 2023 WL 7300618, at *12-14 (E.D.N.Y. Nov. 6, 2023). The Court held that "con man" fell on the prohibited character/guilt side of Rule 23.1, warned that the "corrupt executives" language improperly bundled the defendant with broader wrongdoing, and observed that even accepting the indictment's allegations, the company "was not a Cosa Nostra family." *Id.* at *12-14. The Court concluded that the challenged statements presumptively involved a substantial likelihood of prejudicing the proceeding. *Id.* at *14. That reasoning maps directly onto this case: the United States Attorney called Terry "corrupt," while the FBI Director bundled him, in the same breath, with a separate La Cosa Nostra prosecution involving four organized-crime families.

Ten months later came the Laster motion. That motion concerns *Mr. Laster's* conduct on release. It does not accuse Terry of tampering with anyone, threatening anyone, or violating anything. Nonetheless, the government used it as an opportunity to taint Terry publicly, presenting him as a member of an armed "crew" called GMB. The government's obvious insinuation was that this was a street gang made up of criminal thugs. But the government could not have been more off base. GMB is a basketball nickname. It stands for Get More Blessings, a name that traces to Terry's high school team in Ohio and today serves as the motto of his charitable foundation, 12 Blessings, which raises money to empower disadvantaged kids – not gang members. Apparently, the government knew this when it filed the Laster pleading, conceding the Get More Blessings

---

[2] *See 'The Dumbest': Kash Patel Rips Stephen A. Smith's Take on NBA Gambling Arrests*, HuffPost (Oct. 24, 2025), available at https://www.huffpost.com/entry/kash-patel-stephen-a-smith-the-dumbest_n_68fb4277e4b004dff450bbd9.

meaning and then trying to backpedal on its failure to originally disclose this information to the Court by saying the phrase was later "sanitized" for "public consumption." (ECF No. 133 at 2). It did not include that important information in its Laster letter – instead just saying that Terry was part of a "crew" with firearms called GMB.

> *"A lie can travel halfway around the world while the truth is still putting on its shoes."*
> – old proverb attributed to Mark Twain.

The filing had the predictable effect. The next day's headline: "Ex-NBA player Terry Rozier, accused in betting case, posed with guns as part of 'crew': feds." (ECF No. 133 at 2 (citing the New York Daily News, Aug. 5, 2026)). Note the last word: "feds." Every article the government's letter collects is a story about the government's own motion. My two sentences sit at the bottom of articles responding to the government. The government now asks the Court to ignore its own rhetoric and police only the bottom of the page.

And there is a problem the government's letter does not mention. The government filed the Laster motion with portions under seal. We asked for the unredacted version so that Terry could respond to what was said about him. The government refused. Its explanation was that the sealed material has nothing to do with Terry. That answer does not square with the filing. The public portion named Terry, puts him in the "crew," and discusses guns. The press read it the way it was written. One outlet reported that "prosecutors say Laster and Rozier are part of a gang." Within a day, the same guns-and-crew story was running in papers from Pennsylvania to Guam.[3] If the sealed material had nothing to do with Terry, the government had no reason to put his name in the public portion. If it concerned him, his lawyers are entitled to see it and to answer it. The government cannot use the sealing rules as both a sword and a shield. It cannot brand Terry a gang member in the public half of a filing, seal the rest, refuse his lawyers the complete document, and then invoke Local Rule 23.1 when he answers in the only forum the government left open.[4]

---

[3] *See Guilty Pleas Spark 'Rat' Accusations in Terry Rozier NBA Betting Scandal*, CasinoBeats (Aug. 6, 2026), https://casinobeats.com/2026/08/06/guilty-pleas-spark-rat-accusations-in-terry-rozier-nba-betting-scandal/ ("In a new legal filing, prosecutors say Laster and Rozier are part of a gang, GMB, which has a reputation for owning guns."); *Feds: Terry Rozier posed with guns as part of 'crew'*, LancasterOnline (Lancaster, Pa.) (Aug. 5, 2026), https://lancasteronline.com/sports/nba/feds-terry-rozier-posed-with-guns-as-part-of-crew/article_9a988074-1819-5c92-b89d-bb6994322009.html; The Derrick (Oil City, Pa.) (Aug. 5, 2026), https://www.thederrick.com/news/entertainment/feds-terry-rozier-posed-with-guns-as-part-of-crew/article_57bbdb8a-1e17-5fcf-944f-b7c937d86f47.html; The Guam Daily Post (Aug. 5, 2026), https://www.postguam.com/sports/nation/feds-terry-rozier-posed-with-guns-as-part-of-crew/article_39ac180b-32e2-4eb7-9740-a31c3b5c84dc.html.

[4] *Khan* is instructive on this point as well. Judge Irizarry granted the government's Rule 23.1 motion in that case, and in the same opinion she addressed how sealing is supposed to work in a criminal case. She reminded both parties that "all proceedings in this case are public" and that "our

The government closes its letter by assuring the Court that my claims are "simply wrong," that it "has ample evidence," and that it will prove the charges "beyond a reasonable doubt." (ECF No. 133 at 3). The government says disputes belong in signed filings before this Court, where duties of accuracy and candor apply. On that point, we agree. Rule 23.1 governs extrajudicial statements, not court filings. *See United States v. Smith*, 985 F. Supp. 2d 506, 538 (S.D.N.Y. 2013). Terry's defense has lived by that principle. Every argument we have made in this case is in a motion, under signature, with citations. The government is the party that supplements its filings with podium appearances, television interviews, arrest-day taunts, and a bail motion starring a defendant whose release it does not even seek to revoke. The Supreme Court's instruction has not changed in sixty years: "the trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966).

### III.   The path forward.

The government requests no relief, and neither do I. The government says it intends to raise extrajudicial statements at the August 11 conference. I welcome that conversation, so long as it covers all of the extrajudicial statements in this case, the unnecessary 6:00 a.m. hotel arrest of a non-violent subject, a press conference led by the U.S. Attorney and FBI Director, the Director's mob framing of a man never accused of a mob tie, "corrupt individuals," "your luck has run out," "benched, not for injury, but for integrity," the television appearances, and a public bail filing built to generate the gun and gang headlines it generated, with its underlying material sealed even from Terry's lawyers.

Terry Rozier is innocent. He intends to prove it in court.

Respectfully submitted,

David Oscar Markus

---

Constitution mandates that all criminal proceedings be public." *Khan*, 538 F. Supp. 2d at 936. She held that "[a]s a general matter, submissions should not be filed under seal," and that sealing would be granted "only under extenuating circumstances." *Id.* She then sealed only the unredacted transcript and recording of the press conference that identified possible witnesses and left the remainder of the government's submission on the public record. *Id.* The government has inverted that here. It placed the accusation in the public half of its filing and sealed the material behind it. Judge Irizarry also noted that one party's decision to file under seal "does not automatically translate into a need" for the other side to respond under seal. *Id.* The corollary is what matters to Terry. A defendant cannot answer under seal what he has not been allowed to read.