

JRS:KTF/BW/DIB  *271 Cadman Plaza East*
F. #2024R00288  *Brooklyn, New York 11201*


August 10, 2026

<u>By ECF</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v Terry Rozier
     <u>Criminal Docket No. 25-323 (LDH)</u>

Dear Judge DeArcy Hall:

   The government writes in reply to defendant Rozier's August 9, 2026 letter (Dkt. No. 134 ("Defendant's Response" or "Def. Resp.")) responding to the government's letter alerting the Court to potential Local Rule 23.1 violations.

   Only two and a half pages of the ten-paged Defendant's Response are spent addressing the Local Rule 23.1 violation raised in the government's letter. The remaining pages are dedicated to slinging mud at the government to distract from the conduct at issue. This largely falls flat, and the accusations against the government—most of which involve other cases and statements from almost a year ago—should be rejected for the red herrings they are.

   I.  <u>Defense Counsel's Arguments Fail</u>

   With one exception, none of the efforts to justify defense counsel's statements to the press withstands scrutiny.

   <u>First</u>, the Defendant's Response claims that defense counsel's statements to the press calling the government's allegations "absurd" and "dog whistle" were in "direct rebuttal" to statements made by the government in its application for the revocation of Deniro Laster's bond. Def. Resp. 3. But that misses the entire point. Under Local Rule 23.1, the place to respond to government court filings is in defense court filings, not in statements to the press. The defense has every right to respond to the government's filings before this Court, but when the defense chooses to respond in the press instead, it violates Local Rule 23.1.

   <u>Second</u>, the Defendant's Response justifies defense counsel's statement to the press that "the government 'sees its case is falling apart,'" on the grounds that it is "the direct

inverse of the many comments by the government about the strength of its case." Def. Resp. 3. This concedes that defense counsel's statement ran afoul of Local Rule 23.1(d)(7), which states that public statements offering "[a]ny opinion . . . as to the merits of the case or the evidence in the case" presumptively violates Local Rule 23.1. Rather than attempting to argue that defense counsel's statement did not offer a forbidden opinion—it plainly did—the Defendant's Response rests on the accusation that the government did it first. The problem with that approach, however, is twofold. For starters, two wrongs don't make a right. But just as importantly, the defendant does not point to a single extrajudicial statement by the government discussing the strength of its case—because there are none. For all the quotations in the Defendant's Response, the only extrajudicial statements offering an opinion about the strength of the case are defense counsel's own.

Third, the Defendant's Response cites N.Y. Rule of Professional Conduct 3.6(d) to claim that defense counsel's statement did not violate that rule. Def. Resp. 4. But the standards of that rule of professional conduct are irrelevant to a Local Rule 23.1 inquiry, as numerous courts have held. See United States v. Watson, No. 23-CR-82(EK), 2023 WL 7300618, at *12 & n.15 (E.D.N.Y. Nov. 6, 2023) (citing cases).

Fourth, the Defendant's Response points out that Local Rule 23.1(d)(7) creates only a presumption of a substantial likelihood of interference with a fair trial, and that in this instance, it is unlikely that the statements interfered with a fair trial. On this point the government agrees. Similarly, the government agrees that the conduct here is not as egregious as the conduct in United States v. Khan, a case where the court threatened to make a finding of contempt against Khan's counsel if there were any future violations. 538 F. Supp. 2d 929, 935-36 (E.D.N.Y. 2007). That is exactly why the government is not seeking any remedies other than to discuss the issue with the Court at the next conference. What matters is preventing such conduct from recurring to avoid the possibility of any future statements that could interfere with the fair trial that Local Rule 23.1 is meant to ensure.

Simply put, other than correctly stating that defense counsel's statements have not yet become so severe as to prejudice the trial in this case, each of the defenses of counsel's statements is meritless.

II.     The Defendant's Accusations

Although the defensive accusations against the government are ultimately irrelevant, the government briefly responds to them to correct the record.

Local Rule 23.1(e) permits government press engagement at the time a charging instrument is unsealed. This serves the important function of alerting the public to the taxpayer-funded work of the U.S. Attorney's Office and encourages co-conspirators, witnesses and crime victims to reach out to the appropriate prosecuting office. As the Court is aware, the government has been able to charge additional, related schemes—in part because of the public awareness of, and engagement with, the crimes alleged in the indictment.

The press conference that followed the unsealing of the original indictment also addressed a case with overlapping facts and defendants unsealed on the same day, United States

2

v. Aiello, No. 25-CR-314 (E.D.N.Y.) (RER).   Aiello charged NBA players, members of organized crime families, and others in connection with a poker-rigging fraud scheme, all of which was alleged in the Aiello indictment.   The press conference made clear that these were separate cases and separate charging instruments.   Many of the quotes excerpted in counsel's August 9, 2026 letter related to the Aiello case exclusively, which was clear from the context of the statements.   Further, to the extent any of the statements involved this case at all, they were all permissible under Local Rule 23.1(e), which allows, among other things, "a brief description of the offense charged."   If the defendant really thought any of them violated Local Rule 23.1, he would have raised them when they were made 10 months ago, rather than waiting to raise them until his own counsel's conduct was in question.

The defendant's complaints regarding the circumstances of his arrest are likewise unfounded.   That the press reported the defendant's arrest on the day it happened an hour after it happened at a public hotel provides counsel no basis to claim his arrest was "leaked."   See Def. Resp. 5.   Nor is there anything inappropriate about law enforcement agents arresting a defendant without advanced notice, particularly a well-resourced defendant with means to flee whose arrest takes place on the same day as several other sensitive and dangerous arrests.   Moreover, arrest and agent-safety decisions are not, and should not be, influenced by any corporate internal investigation, so counsel's reference to the NBA's purported exoneration of Rozier (which is inaccurate) is a non-sequitur.

The defendant's complaints about the government's filed, on-the-record motion to revoke Deniro Laster's bond are also meritless.   There is no basis to claim that the government is somehow acting inappropriately by taking steps to protect witnesses and providing evidentiary support regarding multiple serious instances of obstruction of justice by citation to concrete facts—or that any of this justified defense counsel litigating the motion in the press rather than in this Court.   It was entirely appropriate for the government's motion to revoke Deniro Laster's bond to include facts about Terry Rozier.   A witness's assessment of a threat, or cajoling to withhold information from the government, by Deniro Laster in a case that charges both friends is necessarily affected by the facts that (i) Rozier is a wealthy co-defendant who financially supports Laster; (ii) both Laster and Rozier have flaunted gun possession, and (iii) both Laster and Rozier have held themselves out publicly as having a group of armed friends prepared to back them up.   The government need not, and should not, forego the presentation of relevant facts to the Court—particularly in connection with conduct as serious as witness tampering and obstruction of justice—simply because they are inconvenient to Rozier's public image.   And as noted above, to the extent counsel wanted to respond to those allegations, the appropriate forum was on the docket, not in the press.

Counsel's attempt to disparage the government by claiming it "backpedaled" on its allegations regarding GMB in its motion to revoke Deniro Laster's bond is not supported by the record.   The government did not label GMB as a "gang" or reveal that it stands for "Get Money Boyz" in its revocation motion.   But defense counsel's claim to the media that GMB is a charity that stands for "Get More Blessings" was, at best, a half-truth and, at worse, a deliberate misrepresentation.   It was appropriate for the government to correct those extrajudicial statements in its letter raising the apparent Rule 23.1 violation with the Court.

3

Finally, counsel mischaracterizes the government's position regarding Rozier's access to the sealed filing.   The government filed the document under seal as to everyone but counsel for Laster.   <u>See</u> Dkt. No. 131 at 11-12.   This is because it reveals the identity of the witnesses whom Laster attempted to tamper with, who should not be further endangered by dissemination of their identities.   <u>Id.</u>   Laster and his counsel are entitled to that information to defend against the motion.   In contrast, the motion seeks no relief as to Rozier.   The sealing of this portion, including sealing from Rozier, is thus appropriate—and it of course has nothing to do with defense counsel's public statements.

We appreciate the Court's attention to this matter.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/ Kaitlin T. Farrell
Kaitlin T. Farrell
Benjamin Weintraub
David I. Berman
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of Court (LDH) (by ECF)
Counsel of Record (by ECF)